Call in case 13-2209 BBF Engineering Services P.T. et al. v. Kirk D. T. Stoodle, Director of the Michigan Department of Transportation et al. Oral argument not to exceed 15 minutes per side. Avery Keith Williams for the appellant. May it please the court. Good morning. Hold on just a minute. Let your co-counsel get settled here. You may proceed. Thank you, Your Honor. Good morning, Justices. Avery Williams appearing on behalf of plaintiffs, appellants, BBF Engineering and Belandra Foster. When my clients first approached me with this case... Were you reserving any time, Counsel? Yes, I did, Your Honor. I reserved three minutes. Thank you. You may proceed. Your Honor, when my clients first approached me about this case, I indicated to her that she had a number of wonderful facts. She came to me after she had filed multiple complaints with the Federal Highway Administration. She had complied with their rules. She came to me after an investigation was already ongoing by the Federal Highway Administration. What I told her at that time was that her biggest problem was that she was going to face an inordinate amount of motion practice. And that this case really was going to turn on whether she could overcome that motion practice. Because this case, if it ever got to a trier of fact, was one that she would likely prevail in. Williams, she may have a wonderful set of facts, as you're arguing, but she doesn't have a wonderful set of law. You're coming up with things here that just don't work. You're trying to apply Title VI in a way that when you just read it on its face, it doesn't apply. Your Honor, I would disagree with that when you read it in conjunction with 23 U.S.C. Section 324. You don't read other statutes to find out what this statute means. You didn't bring your claim under these other statutes. Well, Your Honor, this other statute was in place for Federal Highway Administration projects. This was a Federal Highway Administration project. Is there a private right of action under these other statutes? Under 23 U.S.C. Section 324, Your Honor, the last sentence of that particular statute reserves all rights and remedies available to that discriminatee. I think that creates a private cause of action for this party. So if there is a private right of action under that statute, you needed to bring a cause of action under that statute. That doesn't change the plain meaning of Title VI. Well, Your Honor, if we then amend... You have a single case that you can point us to where you've got a claim under Title VI, Title VII, Title IX, or whatever it is. We read the language, and it says you can't do that, but then you point to another statute that you say informs that, that then conforms the language of Title VI, VII, or IX. Is there a single case where the Court's ever done that? Your Honor, there isn't a single case where the Court has ever done that. There is the one case that recognizes... Let me go on to your other problem. You seem insistent here that you can sue the State of Michigan, that you can sue the Department of Transportation, and that you can sue the governor, and that you can sue the head of the Department of Transportation in their official capacity for something beyond injunctive relief, all of which is absolutely barred by the Eleventh Amendment. But you simply refuse to understand what Eleventh Amendment immunity law stands for. So what's up with that? Your Honor, I disagree with that respectfully. What we did when we amended our complaint was to seek only injunctive relief against those particular parties in their capacity. We brought our separate actions under 42 U.S.C. section 1983 against Mr. Judnick and Mr. Stutcher. We then sued the governor and Mr. Stuttle in their capacities as the operator of the department as well as the governor of the state. We sought only injunctive relief against those parties in the amended complaint. I want to ask you a couple of questions about this point and the previous point. With respect to the governor and Mr. Stuttle, were they ever actually served with this amended complaint where you're alleging only injunctive relief? We considered them as having been served because in the new e-filing system, we believe they were served. The Attorney General represented their offices. It is the Attorney General that represents these parties. Going back to the question whether there was any court of appeals case that you've been able to find that's consistent with your reading of Title VI, and you answered no and you went on to explain something, but there is the case you said. I want to know about this other case that you believe helps your position, so tell me that. There is a single case that references 23 U.S.C. section 324. It references the application of gender discrimination, sex, as part of Title VI through section 23 U.S.C. 324. It is the only case that cites the statute. There is nothing in Title VI that includes gender or sex, but for Federal Highway Administration projects, sex is made applicable. This case recognized that fact. The next step is... What's the name of the case?  If you want to bring it back in your rebuttal, I'm certain that would be sufficient. That decision is the only decision that references this interface between those two statutes, but it's only for this governmental agency, for the Federal Highway Administration. What other engineering consulting firms should we look at to analyze whether or not, or that you assert that are similarly situated to BBF for purposes of our analysis, and then tell me how those other entities are so similarly situated? Well, the problem with that analysis, and it is one that I think the learning trial judge tried to employ, as well as the state, is that there are no similarly situated firms to BBF. BBF is a minority DBE doing business in the state of Michigan. She, Ms. Foster, was the first black professional engineer, black female professional engineer in the state of Michigan. There are no similarly situated firms. She was competing in a world against large majority firms, and what happened was when Mr. Judnick took over as the head of the TSC for the Detroit region, things changed, and she no longer was given those opportunities to compete. She bid for 30 contracts after this process started and received none. None where she was a prime contractor. There are no similarly situated firms. Everybody is similarly situated. They all submit proposals in a subjective process that's scored by project engineers who then assign points for various matters to these contractors, and these contractors are evaluated through this process under the Brooks Act. Let me try to help you out here. You're bringing a Section 1983 claim. You have to under that claim establish that your client's constitutional or federal statutory rights were violated. With me? Yes, sir. You're trying to bring your Title VI claim. We got that. We talked about that. Now we're into equal protection. Yes. Equal protection by definition means you've been treated differently than somebody else, so what Judge Donald is asking about is to tell us who you were treated differently than, and then we'll try to figure out whether they are or are not similarly situated. At one point you say that she's a class of one, which is sort of what I glean you're arguing right now, but in another part of your briefs you say you're disavowing the class of one analysis, so we cannot figure out what on earth, or I should say I cannot figure out what on earth your equal protection claim is. Well, Your Honor, as I was trying to explain, this is a process where all professional engineering firms that are submitting proposals for these services. All right, so you're claiming all other professional engineering firms that compete for this work are the ones you're comparing yourself to? Yes. Okay, now how are they similarly situated? They're all professional service engineering firms competing for these same projects that are set up for bid awards. HMTV, URS, all of these firms are competing for the same type of work. It's a bid process you say that we need to look at in the analysis and then show how this bidder was treated differently than other bidders. It is the bid process that is established by the state that starts this analysis because nobody is... So if we look at the bid process, just to give you an idea of the difficulty of analyzing this, you complain, for example, about the number of cars under lease requirement, right? Yes. That applied to everybody, right? That applied to everyone. It was included in the proposal. So it applies to everybody. There's no equal protection violation there then? I would disagree with you. To impose that standard when you know that the great majority of these large firms have the capital to be able to comply with that standard is to, in and of itself, create an impossible hurdle for this... So now you're apparently off onto disparate impact. I am off on... Have you brought a disparate impact claim? Yes. Where do I find that? It's not in your complaint. Your Honor, I believe it is in our complaint that we... Okay, when you come back, you tell us where it is in your complaint, all right? Okay, I will do that. But I believe that is in our complaint that the Federal Highway Administration... All of these other firms are similarly situated because they're bidders. Because they have submitted proposals to the state. So you could have a firm that has 3,000 employees, and you could have a firm that has 17, and they're similarly situated? Yes, they are, in terms of competing for this work. And you have a claim that they have been dealt differently by these two individuals, Judak and Screecher, or whatever his name was? Judak and Screecher. Okay. Now, you don't tell us how they were treated differently. Well, Your Honor, this was summary judgment. To get to the point of how we were treated differently, factually, I think we have laid out in our briefs how we were treated differently. The only person that Mr. Judnick knew could not comply with that requirement was Ms. Foster. She was the single DBE in the Detroit TSC that was bidding on these projects. And she was unique. And so is she a class of one? In fact, yes, because that's simply where she is. Those are just facts. She's competing in a world where she is a sole source. Let me ask you this one question, and I want you to sort of think about that and give me the narrowest answer you can. What is the genuine issue of material fact that you assert made summary judgment in this case inappropriate? And if you want to think about it and tell me in your rebuttal, that's fine. Because, you know, at the summary judgment stage, what the judge has to determine is, looking at all of this, whether there is a genuine issue of material fact that precludes summary judgment. And I want to know what that genuine issue is. That's what I want to know. And I've heard what you've told me, but I want to know, and this is one of those kind of – The genuine issue of material fact that precludes summary judgment in this case is X, Y, Z. Your Honor, this case was – she was discriminated against by two gentlemen, Mr. Stutcher and Mr. Jagner. Mr. Stutcher, a genuine issue of material fact, as he walked into the room in this subjective process, changed the score sheets after she had been previously rated and eliminated her from the process altogether. After making the statement, oh, no, I hate her. And you have Mr. Dargan then testifying that he came in and did this. And the trial court says, well, that's not really discriminatory. That's personal animus. He had no personal animus because he did not know her. He had no dealings with her. That's a genuine issue of material fact, to get to that question. Then the issue of Mr. Stutcher – Mr. Jagner having similar issues in which he comes in and makes a statement in front of his secretary that, look, no woman should be making that kind of money. Why is that not an issue of genuine material fact? When he makes this statement, all the testimony as he makes it, and we're into percentages as to whether she thinks, well, was it 100% referring to her, when there is no other woman making that kind of money in the Detroit TSC. I thank you at this juncture, but I think your light is on. Thank you. Good morning, Your Honors. I'm Michael Gittenberg, Assistant Attorney General for the State of Michigan, representing all appellees. And, Your Honors, this case can be fairly described as one long on intrigue but short in substance. When you take away the unsupported factual allegations in the complaint and the unsubstantiated arguments in the briefing and consider only the record evidence in conjunction with the applicable law, it's evident that the district court was justified in its decisions. Before you actually get into that, I want to just ask you two quick questions. Yes. Do you concede that there is an allegation of a disparate impact claim in the complaint as you reviewed it? I don't believe there was one. Even if there was, both Title VI and the Equal Protection Clause, there's a private cause of action only for intentional discrimination. There are different disparate impact regulations under Title VI, but those do not contain a private cause of action. Those are enforced by the FHWA. And you can go back to Washington v. Davis for the proposition that there is no disparate impact cause of action under the Equal Protection Clause. And the second question, since we draw all reasonable inferences in favor of the non-moving party at the summary judgment stage and we don't weigh the evidence, why shouldn't we infer that an evaluation of seven out of ten is a sufficiently adverse action for the appellant's claims in the complaint? Certainly, Judge Donald. First, when the district court made that finding, it relied on a case that cited the Burlington Northern case from the Supreme Court. And that case stated the standard for a Title VII retaliation claim. And in doing so, it made very clear that conduct that may dissuade a reasonable worker from filing a claim of retaliation, what's considered an adverse action under that statute, is not the same as under Title VII's discrimination clause. And because this is not a retaliation claim, using the proper standard for a Title VII, or in this case an equal protection, and the analysis is essentially the same, this court has held under Title VII, for example, the Primes case, that a successful evaluation is not an adverse action. And even if it is considered a poor evaluation, there still has to be a tangible future action attached to that, and that's pure speculation at this point. Ms. Foster alleges that she was not receiving contracts several years prior to this evaluation that came out in 2009, and she also received a contract that came out about approximately six months after this evaluation. So on both ends there, there's no evidence that this affected her ability to compete in any manner. And if you consider that these are two scores of seven on one evaluation, the entire evaluation is averaged, and then all evaluations are averaged for future panels to look at and consider, so we're talking hundreds of a point here. And there's no evidence in the record, no contract pointed to that said, I was only one point away on this one, and the panel said that they looked at my prior evaluation scores, and that was what made the difference. Now, I would like to point to two pieces of evidence to sort of set the table for the court, and the first is the testimony of Cedric Dargan that appears at page five and six of BBF's principal brief. And he says, back when he started, BBF was the only firm in Detroit that wanted this kind of work, and as time went on, the big firms moved in and there was more competition. And the second is Ms. Foster's testimony, which is record 50-3, and about the last ten pages of that testimony starting at, I believe, 1722 and on. And there's a dialogue there of the employees that had been with her company and been with MDOT for a long time prior to joining her company that left the company, and so she's facing more competition and this turnover in staff. And with that in mind, I'd like to turn to the claims against Mr. Judnick and Mr. Stucher. Mr. Stucher is entitled to qualified immunity because, I know we just discussed the adverse action, but none of the other actions attributed to him rise to the level of material adversity. And as BBF just admitted here, there are no similarly situated firms. This court has been very clear that you can't say no one is similarly situated to me or everyone is similarly situated to me without showing some affirmative evidence of how these firms are similarly situated, whether it be similar staff, similar qualifications, similar experience on MDOT jobs, some piece of evidence to create an issue of material effect on this. And there just is none. BBF only presented two firms to the district court, and the issues involving those firms had nothing to do with Mr. Judnick, Mr. Stucher, or any of the claims in this case. These other companies were not presented to the district court. I'd argue that they waived the ability to claim to this court that they are similarly situated. And again, there is not a scintilla of evidence that there is any similarity between any of these firms. So let me be specific with you. The firms that the district court talked about were Wade Trim Associates and Great Lakes Engineering. And so who are we talking about now? I know he says everybody, but who? There was a list of firms that included HNTB, Fishbeck Thompson, URS I believe was another one. There may have been more. But essentially the argument is that all firms are alike, and that's just not true under this court's precedence. That would be the same as saying all lawyers are similarly situated because they all have a bar card, or everyone that works for Microsoft is similarly situated because they're an employee of the company. And finally, even if this court were to go through the remainder of the McDonnell Douglas standard, there's no evidence that Mr. Judnick made this evaluation based on any animosity. There are three affidavits discussing the performance issues on this specific contract. Those are of Dina Poponik, Steve Nichols, and then Mr. Judnick's supervisor, Rita Screws, testified by affidavit that she met with Mr. Judnick and Ms. Foster to discuss this evaluation, and it wasn't changed. So even if it wasn't considered a formal appeal, Ms. Screws has at least ratified that score. I'd like to move on to Mr. Stutcher, unless the panel has any questions. Mr. Stutcher, again, the same problem with the similarly situated prong. And if the court were to go through the McDonnell Douglas analysis with him, the only inference that can be drawn is that he had a personal dispute or personal animosity towards Ms. Foster. The only inference or mention of gender or race is the use of the word her, but there is simply no pronoun in the English language to refer to a female without using the word her. We don't have gender neutral pronouns in the English language. For that reason, the court could affirm on that alternate basis. To respond to the discussion regarding Title VI, the statute is crystal clear what it applies to. It applies to race, color, and national origin. The only argument on appeal is that a district court should have included gender in its analysis. Every federal court that's reached the issue has concluded the opposite. With respect to Director Steudle and Governor Snyder, they were never served with the summons and complaint. We never waived it. Every new defendant is entitled to the summons and complaint to secure the court's jurisdiction over him. These were never served under Rule 4. And even if they were, these claims were never litigated. There's been no discovery with respect to the governor or the director. And standing here today, I can't tell you what the current ongoing violation of law is that they seek conjunctive relief for, as opposed to past incidents involving two employees who no longer work for the department. In closing, the whistleblower claim fails for a number of reasons, none of which have been sufficiently addressed. And unless the court has any other questions. Thank you. Thank you. Thank you. May it please the court. First, Your Honor, I would point to Count 2 of the Section 1983 section of the complaint, paragraphs 105 through 111, as addressing disparate treatment of BBF Engineering and Ms. Foster, in direct response to the court's second question. And then as it relates to the case to which I was referencing, I would refer the court to MCW Incorporated v. Lewis, L-E-W-I-S-522-F-SUP-338 at page 346. A Middle District Court of Tennessee opinion. Again, what the state continues to want to ignore in this particular case is the system. The system that has been created creates a playing field where BBF Engineering competes with all of these other firms. HNTB, URS, Great Lakes Engineering, and so on. They all compete on the same level. What has happened is she is a unique entity among those particular firms. She is a DBE, was the DBE of the year in 2008. What happened and what changed was these two gentlemen discriminated against her. And in fact, Mr. Judnick then went to work for HNTB. All of these things were pled, all of these things were litigated. And even as we sit here today, that system has not changed. There are no black female engineering firms that now exist. DBF Engineering has gone out of business. She no longer competes for this business. That has been the end result of this case. And what has happened here is we never got a chance to really present these issues to a trier of fact. The trial court precluded us from doing that. And I think there was smoke here. And where there is smoke, there is generally fire. What happened was the trial court's decision doused that fire and prevented us from going forward and having the trier of fact evaluate these issues. The landscape is such that you've got to meet the plausibility standards. You've got to demonstrate a genuine issue of material fact in order to get there. And that's the thing that we're trying to find out. First of all, legally, how do you overcome the legal hurdles? And then secondly, how do you meet the standard that's been established by the Supreme Court? But each one of these evidentiary issues, with all due respect, Your Honor, is a competing evidentiary issue. There's opinions on both sides. Mr. Judnick says one thing. Mr. Love Charles testifies exactly the opposite and says that Mr. Judnick was out to get BBF Engineering and that the one way of doing that was to remove Mr. Charles from the process. And that was what Mr. Judnick was trying to do. And that testimony was unrefuted. And the court didn't address that. She ignored that. And those are the kinds of issues that should go to the trier of fact. But it's competing testimony that should be, not for the trial judge to just summarily accept one side of the story.